UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

HENRIETTA J. MONDAY,

        Plaintiff,

   v.

SAXON MORTGAGE SERVICES, INC.;
OCWEN LOAN SERVICING, LLC; and
U.S. BANK N.A.,

        Defendants.
                                   /

NO. CIV. 2:10-989 WBS KJM

<u>MEMORANDUM AND ORDER RE:
MOTION TO DISMISS</u>

----oo0oo----

        Plaintiff Henrietta J. Monday brought this action against defendants Saxon Mortgage Services, Inc. ("Saxon"), Ocwen Loan Servicing, LLC ("Ocwen"), and U.S. Bank N.A. ("U.S. Bank") arising out defendants' allegedly wrongful foreclosure on plaintiff's home.  Presently before the court is defendants Ocwen and U.S. Bank's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).
////

1

I.   <u>Factual and Procedural Background</u>

In November of 2007 plaintiff entered into a mortgage transaction to refinance her property located at 1780 Edwin Drive in Yuba City, California. (Compl. ¶¶ 1, 7.) Under the terms of the refinance, plaintiff borrowed $255,000.00, making her monthly $1,814.31 payment of principal and interest. (<u>Id.</u> ¶ 7.) In February 2008, Saxon allegedly made an accounting error and falsely informed plaintiff that she failed to maintain homeowners' insurance on her home, even though plaintiff had a valid homeowners' insurance policy at the time. (<u>Id.</u> ¶¶ 8, 10.) As a result of the alleged error, Saxon increased plaintiff's monthly mortgage payment by $523.00 per month to pay for a Saxon-instituted homeowners' insurance policy. (<u>Id.</u> ¶ 8.)

Plaintiff received a monthly mortgage statement from Saxon that reflected this increase in March of 2008. (<u>Id.</u> ¶ 9.) Plaintiff allegedly made numerous calls to Saxon to reverse the monthly payment increase, but could not get any of Saxon's customer service agents to admit Saxon was in error. (<u>Id.</u>) Plaintiff was not able to afford the $523.00 increase in her monthly mortgage payment and instead made her previous regular payment of $1,814.31 to Saxon for her March bill. (<u>Id.</u>) Plaintiff allegedly attempted to get Saxon to clear the error on her account by contacting customer service agents and writing letters to Saxon for nine months. (<u>Id.</u> ¶ 11.) During this time, plaintiff regularly sent in her previous monthly payment amount before Saxon's additional insurance charge. (<u>Id.</u>)

In November 2008, plaintiff allegedly received a notice of intent to foreclose from Saxon. (<u>Id.</u> ¶ 12.) Upon receiving

2

the notice plaintiff contacted Saxon again and was able to speak to a Saxon manager who confirmed that Saxon had made a mistake and that plaintiff's homeowners' insurance had not lapsed. (Id.) The manager allegedly assured plaintiff that the mistake would be corrected and that Saxon would not foreclose on her home. (Id.) On November 18, 2008, plaintiff allegedly received a letter from Saxon that stated that the insurance issue with her account had been resolved, the insurance purchased on her house by Saxon had been canceled, and that a refund of $3,679.00 had been credited to her loan. (Id. ¶ 13.) However, Saxon allegedly applied the credit to plaintiff's principal balance and not the reported delinquency on her loan, which caused plaintiff's account to appear as if it was still in default. (Id.)

In December 2008, plaintiff mailed in her typical $1,814.31 monthly payment to Saxon, believing that any account errors were corrected. (Id. ¶ 14.) Saxon immediately returned plaintiff's payment and stated that it would not accept the payment because she was in default. (Id.) On January 15, 2009, Saxon sent plaintiff a Notice of Default, which it recorded in the Sutter County Recorder's Office. (Id. ¶ 15.)

In March 2009, plaintiff hired an attorney to induce Saxon to correct their alleged accounting errors. (Id. ¶ 16.) Saxon refused to correct the alleged errors and instead offered plaintiff a loan modification. (Id.) On April 13, 2009, Saxon sent plaintiff a Notice of Trustee's Sale. (Id. ¶ 17.) Fearing she would lose her home, plaintiff allegedly accepted and signed Saxon's proposed loan modification, which required monthly payments of $1,428.95 each month from June 2009 to August 2009.

3

1 (Id. ¶ 18.)  Despite allegedly making her monthly payments on
2 time, plaintiff avers that Saxon insisted plaintiff was not
3 making timely payments, that her loan modification was never
4 approved, and that she never signed the trial modification.  (Id.
5 ¶¶ 19-20.)  At the end of the trial modification period, Saxon
6 claimed plaintiff did not make payments under the trial plan and
7 refused to accept her payments for July and August of 2009.  (Id.
8 ¶ 21.)  At the end of August 2009, Saxon allegedly offered
9 plaintiff a second trial loan modification plan for September
10 2009 through November 2009, which plaintiff accepted.  (Id. ¶
11 22.)  Plaintiff allegedly sent her payments in on time during the
12 trial period in accordance with the modification agreement.  (Id.
13 ¶¶ 23-24.)

14      On November 13, 2009, Saxon allegedly told plaintiff's
15 attorney by telephone that plaintiff's loan had been sold to
16 Ocwen.  (Id. ¶ 25.)  Plaintiff subsequently mailed her December
17 2009 mortgage payment to Ocwen.  (Id.)  On December 16, 2009, a
18 foreclosure sale was conducted and plaintiff's property was sold
19 to U.S. Bank.  (Id. ¶¶ 26-27.)  Plaintiff was sent a Notice to
20 Quit from an attorney for U.S. Bank on January 28, 2010.  (Id. ¶
21 27.)  When plaintiff refused to leave her home, U.S. Bank
22 commenced an unlawful detainer action against plaintiff in Sutter
23 County Superior Court on February 18, 2010.  (Id. ¶ 29.)

24      Plaintiff filed this action against defendants on March
25 19, 2010 in Sutter County Superior Court, alleging causes of
26 action for negligence, negligent misrepresentation, fraud,
27 cancellation of instrument, imposition of constructive trust,
28 quiet title, and violation of California's Unfair Competition Law

4

("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210. Defendants subsequently removed the action to this court on April 23, 2010 on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332. (Docket No. 1.) Defendants Ocwen and U.S. Bank now move to dismiss those claims against them in the Complaint.[1]

II. Discussion

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). To survive a motion to dismiss, a plaintiff needs to plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 556-57).

In general a court may not consider items outside the pleadings upon deciding a motion to dismiss, but may consider items of which it can take judicial notice. Barron v. Reich, 13

---

[1] Plaintiff has conceded that her negligent misrepresentation claim is insufficient as pled, and requests leave to amend. The court must accordingly grant Ocwen and U.S. Bank's motion to dismiss this claim and will give plaintiff an opportunity to amend her complaint to correct the deficiencies identified by defendants.

5

F.3d 1370, 1377 (9th Cir. 1994).  A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  Ocwen and U.S. Bank submitted a request for judicial notice, asking the court to take judicial notice of several publically recorded documents related to plaintiff's mortgage.  (Docket No. 7.)  The court will take judicial notice of these documents, since they are matters of public record whose accuracy cannot be questioned.  See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

  A. Negligence Claim

    To prove a cause of action for negligence, plaintiff must show "(1) a legal duty to use reasonable care; (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff injury."  Mendoza v. City of Los Angeles, 66 Cal. App. 4th 1333, 1339 (1998) (citation omitted).  "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide."  Vasquez v. Residential Invs., Inc., 118 Cal. App. 4th 269, 278 (2004).  The Complaint contends that defendants owed a duty of care to plaintiff which includes a duty to take "reasonable actions to maintain accurate records of payments and homeowner's insurance coverage."  (Compl. ¶ 32.)  Plaintiff alleges that Ocwen breached this duty when it accepted payments during plaintiff's trial modification period, did not properly credit these payments plaintiff's account, and subsequently foreclosed

1  on plaintiff's property despite being aware of its accounting
2  errors.  (Id. ¶¶ 36-38.)
3         Generally, "[a]bsent 'special circumstances' a loan
4  transaction 'is at arms-length'" and no duties arise from the
5  loan transaction outside of those in the agreement.  Rangel v.
6  DHI Mortgage Co., Ltd., No. CV F 09-1035 LJO GSA, 2009 WL
7  2190210, at *3 (E.D. Cal. July 21, 2009) (quoting Oaks Management
8  Corp. v. Superior Court, 145 Cal. App. 4th 453, 466 (2006)).
9  Absent contrary authority, a pleading of an assumption of duty by
10 Ocwen, or a special relationship, plaintiff cannot establish
11 Ocwen owed her a duty of care.  See Hardy v. Indymac Federal
12 Bank, --- F.R.D. ---, No. CV F 09-935 LJO SMS, 2009 WL 2985446,
13 at *7 (E.D. Cal. Sept. 15, 2009); Bentham v. Aurora Loan Servs.,
14 No. C-09-2059 SC, 2009 WL 2880232, at *2-3 (N.D. Cal. Sept. 1,
15 2009).
16         Even if Saxon owes plaintiff a duty of care, she has
17 cited no authority for the proposition that a subsequent
18 purchaser of a loan, such as Ocwen, or the purchaser at a
19 foreclosure sale, such as U.S. Bank, owes a duty to ensure the
20 legitimacy of the record keeping of the subsequent owner of a
21 loan.  Plaintiff has not plead an unusual level of involvement in
22 her loan by Ocwen or U.S. Bank that would create a duty of care,
23 and accordingly the court will grant Ocwen and U.S. Bank's motion
24 to dismiss her negligence claim.  See Marks v. Ocwen Loan
25 Servicing, No. 07-2133, 2009 WL 975792, at *7 (N.D. Cal. Apr. 10,
26 2009).
27      B.   Fraud and Civil Conspiracy to Commit Fraud Claim
28           In California, the essential elements of a claim for

7

fraud are "(a) a misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." In re Estate of Young, 160 Cal. App. 4th 62, 79 (2008). Under the heightened pleading requirements for claims of fraud under Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting the fraud." Fed. R. Civ. P. 9(b). A plaintiff must include the "who, what, when, where, and how" of the fraud. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted); Decker v. Glenfed, Inc., 42 F.3d 1541, 1548 (9th Cir. 1994).

Conspiracy is simply a legal doctrine that establishes joint and several liability by the conspirators for an underlying tort. See Entm't Research Group v. Genesis Creative Group, 122 F.3d 1211, 1228 (9th Cir. 1997). A conspiracy to commit a tort therefore requires the commission of the actual underlying tort, although every member of the conspiracy need not commit all elements of the tort individually so long as a conspiracy has been formed and he or she acts in furtherance of its design. See Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 510-11 (1994); see also Doctors' Co. v. Superior Court, 29 Cal. 3d 39, 44 (1989). In a case like this, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint must inform each defendant of his alleged participation in the fraud." Ricon v. Reconstrust Co., No. 09-937, 2009 WL 2407396, at *3 (S.D. Cal. Aug. 4, 2009) (quoting DiVittorio v. Equidyne Extractive Indus., 822 F.2d 1242, 1247 (2d Cir. 1987)).

1           Plaintiff alleges that Ocwen committed fraud when it
2  conspired with Saxon to create the false impression that her loan
3  was in default and that they had the lawful right to foreclose on
4  her property.  (Compl. ¶ 60.)  Outside of the conclusory
5  allegation that Ocwen and U.S. Bank conspired with Saxon, the
6  Complaint does not plead precisely how each party participated in
7  the alleged fraud.  All of the fraudulent actions alleged in
8  plaintiff's claim were allegedly taken by Saxon.  The Complaint
9  does not specify what, if any, independent fraudulent
10 representations Ocwen or U.S. Bank made to plaintiff, who made
11 them, or when they were made.  Without greater factual
12 enhancement, the mere assertion that Ocwen and U.S. Bank
13 conspired with Saxon to defraud plaintiff fails to inform
14 defendants of how they each participated in the fraudulent
15 conspiracy, and accordingly fails to meet the heightened pleading
16 standards of Rule 9(b).  See Ricon, 2009 WL 2407396, at *3.  The
17 court therefore must grant Ocwen and U.S. Bank's motion to
18 dismiss plaintiff's fraud claim against them.  See Vess, 317 F.3d
19 at 1106.

     C.   Cancellation of Instrument Claim

21          Plaintiff's third claim requests cancellation of the
22 Trustee's Deed Upon Sale of her property because she allegedly
23 was not in default when the foreclosure sale on her home took
24 place.  (Compl. ¶¶ 75-76.)  "A written instrument, in respect to
25 which there is a reasonable apprehension that if left outstanding
26 it may cause serious injury to a person against whom it is void
27 or voidable, may, upon his application, be so adjudged, and
28 ordered to be delivered up or canceled."  Cal. Civ. Code § 3412.

9

"To 'cancel' a contract means to abrogate so much of it as remains unperformed.  It differs from 'rescission,' which means to restore the parties to their former position.  The one refers to the state of things at the time of the cancellation; the other to the state of things existing when the contract was made." Young v. Flickinger, 75 Cal. App. 171, 174 (1925); accord Phleger v. Countrywide Home Loans, Inc., No. C 07-01686, 2009 WL 537189, at *15 (N.D. Cal. Mar. 3, 2009).

Plaintiff has sufficiently alleged an irregularity with defendants' foreclosure sale under California Civil Code sections 2924-2924i, California's "comprehensive statutory framework established to govern non-judicial foreclosure sales." Moeller v. Lien, 25 Cal. App. 4th 822, 834 (1994).  A foreclosure sale is wrongful under California law when a mortgagor either is not in default or cures any such default within the time allotted by the California Civil Code.  See Cal. Civ. Code § 2924 (applying the non-judicial foreclosure statute where "a power of sale is conferred upon the mortgagee, trustee, or any other person, to be exercised after breach of the obligation for which that mortgage or transfer is a security"); see also Bank of Am., N.A. v. La Jolla Grp. II, 129 Cal. App. 4th 706, 711-12 (2005) (invalidating a foreclosure sale because the mortgagor had cured the default before the sale); Bisno v. Sax, 175 Cal. App. 2d 714, 724 (1959) (same).  Plaintiff contends that the Notice of Default supplied by defendants is inaccurate and that she never made any late payments on her loan.  Assuming these facts as true, the foreclosure sale of plaintiff's home was invalid under California's non-judicial foreclosure scheme.

1        Ocwen and U.S. Bank finally argue that plaintiff must
2   tender the full amount due on her loan to cancel the Trustee's
3   Deed Upon Sale.  Under California law, a defaulted borrower is
4   "required to allege tender of the amount of [the lender's]
5   secured indebtedness in order to maintain any cause of action for
6   irregularity in the sale procedure."  Abdallah v. United Sav.
7   Bank, 43 Cal. App. 4th 1101, 1109 (1996), cert. denied, 519 U.S.
8   1081 (1997); see also Karlsen v. Am. Sav. & Loan Ass'n, 15 Cal.
9   App. 3d 112, 117 (1971).  "The rationale behind the rule is that
10  if plaintiffs could not have redeemed the property had the sale
11  procedures been proper, any irregularities in the sale did not
12  result in damages to the plaintiffs."  FPCI RE-HAB 01 v. E & G
13  Investments, Ltd., 207 Cal. App. 3d 1018, 1021 (1989).
14       In a situation where a plaintiff alleges that she never
15  defaulted on her loan, the tender rule and its rationale are
16  inapplicable.  Unlike the parties seeking to set aside a
17  foreclosure sale in the cases cited by defendants, plaintiff has
18  allegedly not defaulted on her loan and does not allege a simple
19  irregularity in the procedures of a foreclosure sale.  Instead,
20  plaintiff alleges that defendants had no right to foreclose on
21  her home and yet did so despite knowing that she was not in
22  default.  In this instance, a failure to tender does not
23  demonstrate a lack of causation between the irregularities in the
24  foreclosure sale and damages to plaintiff because defendants had
25  no right to begin a foreclosure sale without plaintiff's default
26  irrespective of the procedures they used.
27       Furthermore, plaintiff is not requesting title to her
28  former property free and clear and instead requests cancellation

11

of the Trustee's Deed and a return to her previous mortgage terms before Saxon's alleged errors and the sale.  Forcing plaintiff to tender the full amount due on the loan in this case would be tantamount to making plaintiff's entire principal become due as a result of defendants' alleged wrongdoing.  Such a result would be inequitable and contrary to the purpose of the tender rule.  Cf. Palmer v. Wilson, 502 F2d 860, 862 (9th Cir. 1974) (holding that "[t]he propriety of . . . a conditional decree of rescission, of course, will depend on the equities present in a particular case").  Accordingly, plaintiff is not required to allege tender and has adequately pled a cause of action for cancellation of instrument.

      D.    Constructive Trust Claim

A constructive trust is an involuntary equitable trust created as a remedy to compel the transfer of property from the person wrongfully holding it to the rightful owner.  Communist Party v. 522 Valencia, Inc., 35 Cal. App. 4th 980, 990 (1995). "The imposition of a constructive trust requires: (1) the existence of res (property or some interest in property); (2) the right of the complaining party to that res; and (3) some wrongful acquisition or detention of the res by another party who is not entitled to it."  In Re Real Estate Assoc. Ltd P'ship Litig., 223 F. Supp. 2d 1109, 1140 (C.D. Cal. 2002). Plaintiff has alleged that she has an interest in and right to the property at issue because she timely made her payments under the terms of her mortgage.  Furthermore, as explained above, plaintiff has alleged that U.S. Bank acquired her property in an invalid foreclosure sale, and therefore has no right to it.  Accordingly, plaintiff

12

has plead a proper request for the imposition of a constructive trust.

However, a constructive trust is an equitable remedy, not an independent cause of action. See Batt v. City & County of San Francisco, 155 Cal. App. 4th 65, 82 (2007) ("A constructive trust is 'not an independent cause of action but merely a type of remedy,' and an equitable remedy at that." (internal citations omitted)).  While a constructive trust remains available as a remedy to plaintiff if she prevails on her other causes of action, it is inappropriate as a stand alone claim. See Id. Accordingly, the court must dismiss plaintiff's claim for a constructive trust.

### E. Quiet Title Claim

An action to quiet title may be brought to establish title against adverse claims to real property or any interest therein. Cal. Code Civ. Proc. § 760.020.  A quiet title action must include: (1) a description of the property in question; (2) the basis for plaintiff's title; and (3) the adverse claims to plaintiff's title. Cal. Code Civ. Proc. § 761.020.  "[A] mortgagor cannot quiet his title against the mortgagee without paying the debt secured." Watson v. MTC Fin., Inc., No. Civ. 2:09-01012 JAM KJM, 2009 WL 2151782 (E.D. Cal. Jul. 17, 2009) (quoting Shimpones v. Stickney, 219 Cal. 637, 649 (1934)). Plaintiff has not alleged that she has paid the entirety of the debt on her mortgage, but instead that she was making her payments on schedule at the time of the foreclosure sale of her property.  Since plaintiff has not yet satisfied all her obligations under the Deed of Trust by paying the entirety of the

debt of her mortgage, she cannot sustain a quiet title action against Ocwen and U.S. Bank. See Kelley v. Mortgage Elec. Reg. Sys., Inc. 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009). Accordingly, the court will grant U.S. Bank and Ocwen's motion to dismiss plaintiff's quiet title claim.

F.   UCL Claim

California's UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999). This cause of action is generally derivative of some other illegal conduct or fraud committed by a defendant, and "[a] plaintiff must state with reasonable particularity the facts supporting the statutory elements of the violation." Khoury v. Maly's of Cal., Inc., 14 Cal. App. 4th 612, 619 (1993).

Plaintiff's UCL claim is vague and conclusory as plead. Specifically, the claim lumps all of defendants together, claiming that defendants were aware plaintiff did not default on her loan and mislead her into believing her home would be lost in foreclosure. (Compl. ¶¶ 92-101.) As previously noted, it is unclear to what extent, if any, these allegations apply to Ocwen and U.S. Bank, since plaintiff has not alleged independent fraudulent conduct on the part of either defendant or explained their involvement in the unfair and unlawful acts alleged in the claim. Ocwen and U.S. Bank should not be forced to guess as to how they violated the UCL. See Gauvin v. Trombatore, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988). Accordingly, the court will grant Ocwen and U.S. Bank's motion to dismiss plaintiff's UCL claim because it fails to adequately articulate the facts

1 supporting each violation of the UCL against defendants.

2     IT IS THEREFORE ORDERED that Ocwen and U.S. Bank's
3 motion to dismiss the Complaint as to Ocwen and U.S. Bank be, and
4 the same hereby is, GRANTED as to plaintiff's claims for
5 negligence, negligent misrepresentation, fraud and civil
6 conspiracy to commit fraud, constructive trust, quiet title, and
7 violations of the UCL and DENIED in all other respects.

8     Plaintiff has twenty days from the date of this Order
9 to file an amended complaint, if she can do so consistent with
10 this Order.

11 DATED:  June 25, 2010

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE