UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| HENRIETTA J. MONDAY, an Individual, | NO. CIV. 2:10-989 WBS KJM |
| Plaintiff, | MEMORANDUM AND ORDER RE: MOTIONS TO DISMISS AND TO STRIKE |
| v. | |
| SAXON MORTGAGE SERVICES, INC, a Texas Corporation; OCWEN LOAN SERVICING, LLC, a Delaware Limited Liability Company; U.S. BANK, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF ABFC 2007-WMC1 TRUST ASSET BACKED FUNDING CORPORATION ASSET BACKED CERTIFICATED, SERIES 2007-WMC1, an Ohio Business Entity; T.D. SERVICE COMPANY, a California Corporation; and DOES 1 through 10, Inclusive, | |
| Defendants. | |

----oo0oo----

Plaintiff Henrietta J. Monday brought this action against defendants Saxon Mortgage Services, Inc. ("Saxon"), Ocwen Loan Servicing, LLC ("Ocwen"), U.S. Bank, N.A., as Trustee for

1

the registered holders of ABFC 2007-WMC1 Trust Asset Backed Funding Corporation Asset Backed Certificated, Series 2007-WMC1 ("U.S. Bank"), and T.D. Service Company ("TDS"), arising out defendants' allegedly wrongful foreclosure on plaintiff's home. Presently before the court are motions to dismiss plaintiff's First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) brought separately by Saxon, U.S. Bank and Ocwen, and TDS, and Saxon's motion to strike portions of plaintiff's FAC pursuant to Rule 12(f).

I.   Factual and Procedural Background

In November of 2007, plaintiff entered into a mortgage transaction to refinance her home. (FAC ¶ 10.) Under the terms of the refinance, plaintiff borrowed $255,000.00, to be repaid with a monthly $1,814.31 payment of principal and interest. (Id. ¶ 10.) In February of 2008, Saxon allegedly falsely informed plaintiff that she failed to maintain homeowners' insurance on her home, even though plaintiff had a valid homeowners' insurance policy at the time. (Id. ¶¶ 11, 13.) As a result of the alleged error, Saxon increased plaintiff's monthly mortgage payment by $523.00 per month to pay for a Saxon-instituted homeowners' insurance policy. (Id. ¶ 11.)

Plaintiff received a monthly mortgage statement from Saxon that reflected this increase in March of 2008. (Id. ¶ 12.) Plaintiff allegedly made numerous calls to Saxon to reverse the monthly payment increase, but could not get any of Saxon's customer service agents to admit Saxon was in error. (Id.) Plaintiff was not able to afford the $523.00 increase in her monthly mortgage payment and instead made her previous regular

2

payment of $1,814.31 to Saxon for her March bill. (Id.) Plaintiff allegedly attempted to get Saxon to clear the error on her account by contacting customer service agents and writing letters to Saxon for nine months. (Id. ¶ 14.) During this time, plaintiff regularly sent in a monthly payment in the amount agreed upon before Saxon's additional insurance charge. (Id.)

In November of 2008, plaintiff received a Notice of Intent to Foreclose from Saxon. (Id. ¶ 15.) She then contacted Saxon again and was able to speak to a Saxon manager who confirmed that Saxon had made a mistake and that plaintiff's homeowners' insurance had not lapsed. (Id.) The manager allegedly assured plaintiff that the mistake would be corrected and that Saxon would not foreclose on her home. (Id.) On November 18, 2008, plaintiff allegedly received a letter from Saxon that stated that the insurance issue with her account had been resolved and that a refund of $3,679.00 had been credited to her loan. (Id. ¶ 16.) However, Saxon allegedly applied the credit to plaintiff's principal balance and not the reported delinquency on her loan, which caused plaintiff's account to appear as if it was still in default. (Id.)

In December of 2008, plaintiff mailed her typical $1,814.31 monthly payment to Saxon, believing that any account errors were corrected. (Id. ¶ 17.) Saxon immediately returned plaintiff's payment and stated that it would not accept the payment because she was in default. (Id.) On January 15, 2009, Saxon and TDS sent plaintiff a Notice of Default, which was recorded in the Sutter County Recorder's Office. (Id. ¶ 18.)

Saxon continued to refuse to correct its alleged errors

3

and instead offered plaintiff a trial loan modification in March of 2009. (Id. ¶ 19.) On April 13, 2009, Saxon and TDS sent plaintiff a Notice of Trustee's Sale. (Id. ¶ 20.) Fearing she would lose her home, plaintiff allegedly accepted and signed Saxon's proposed loan modification, which required monthly payments of $1,428.95 each month from June 2009 to August 2009. (Id. ¶ 21.) Despite allegedly making her monthly payments on time, plaintiff avers that Saxon insisted plaintiff was not making timely payments, that her loan modification was never approved, that she never signed the trial modification agreement, and that she made extra payments. (Id. ¶¶ 22-23.) At the end of the trial modification period, Saxon claimed plaintiff did not make payments under the trial plan and refused to accept her payments for July and August of 2009. (Id. ¶ 24.) At the end of August 2009, Saxon allegedly offered plaintiff a second trial loan modification plan for September 2009 through November 2009, which plaintiff accepted. (Id. ¶ 25.) Plaintiff allegedly sent her payments in on time during the trial period in accordance with the modification agreement. (Id. ¶¶ 26-27.)

On November 13, 2009, Saxon allegedly told plaintiff's attorney by telephone that plaintiff's loan had been sold to Ocwen. (Id. ¶ 28.) Plaintiff subsequently mailed her December 2009 mortgage payment to Ocwen. (Id.) On December 16, 2009, a foreclosure sale of plaintiff's property was conducted. (Id. ¶ 29.) Plaintiff was sent a Notice to Quit from an attorney for U.S. Bank on January 28, 2010. (Id. ¶ 30.) When plaintiff refused to leave her home, U.S. Bank commenced an unlawful detainer action against plaintiff in Sutter County Superior Court

4

on February 18, 2010.  (Id. ¶ 32.)  On May 28, 2010, judgment was entered in favor of Monday in that action.  (Id. ¶ 35.)

Plaintiff's FAC (Docket No. 15) alleges claims against Saxon, Ocwen, and U.S. Bank for negligence, fraud and civil conspiracy to commit fraud, and violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, and against all defendants for negligent misrepresentation, cancellation of instrument, slander of title, and to set aside the trustee's sale.  Defendants now move to dismiss the claims against them under Rule 12(b)(6) and Saxon also moves to strike portions of the FAC.

II. Discussion

    A.   Motion to Dismiss

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility."  Iqbal, 129 S. Ct. at 1949

1  (quoting Twombly, 550 U.S. at 556-57).[1]

2         1.  Negligence Claim against Saxon, Ocwen, and U.S.
3             Bank

4      To prove a cause of action for negligence, plaintiff must show "(1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." Mendoza v. City of L.A., 66 Cal. App. 4th 1333, 1339 (2d Dist. 1998). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." Vasquez v. Residential Invs., Inc., 118 Cal. App. 4th 269, 278 (4th Dist. 2004).

          a.  Saxon

California courts have stated that "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1096 (3d Dist. 1991). However, Nymark is limited in two ways. "First, a lender may owe a duty of care sounding in negligence to a borrower when the lender's activities exceed those of a conventional lender." Osei v. Countrywide Home Loans, 692 F. Supp. 2d 1240, 1249 (E.D. Cal. 2010); see Wagner v. Benson, 101 Cal. App. 3d 27, 35 (4th Dist. 1980) ("Liability to a borrower for negligence arises only when the lender 'actively

---

[1] The parties have requested that the court take judicial notice of several publicly-recorded documents related to plaintiff's mortgage. (Docket Nos. 20, 26.) The court will take judicial notice of these documents, as they are matters of public record whose accuracy cannot be questioned. See Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir. 2001).

6

participates' in the financed enterprise 'beyond the domain of the usual money lender.'" (quoting Connor v. Great W. Sav. & Loan Ass'n, 69 Cal. 2d 850, 864 (1968))). "Second, even when a lender's acts are confined to their traditional scope, Nymark announced only a 'general' rule." Osei, 692 F. Supp. 2d at 1249. To determine whether a duty actually existed on the facts of the case, the Nymark court applied the six-factor test established by the California Supreme Court in Biakanja v. Irving, 49 Cal. 2d 647 (1958). The Biakanja test balances six non-exhaustive factors:

> [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

Glenn K. Jackson Inc. v. Roe, 273 F.3d 1192, 1197 (9th Cir. 2001) (quoting Biakanja, 49 Cal. 2d at 650) (alterations in original). Although Biankaja applied the test to determine whether a defendant could be held liable to a third person not in privity with the defendant, Nymark held that the test also determined "whether a financial institution owes a duty of care to a borrower-client." Nymark, 231 Cal. App. 3d at 1098.

In support of the first Nymark exception, plaintiff contends that "[i]llegally force-placing overpriced insurance is not part of a lender's usual role as such an action exceeds the scope of a lender's conventional role as a mere lender of money." (FAC ¶ 38.) Plaintiff has provided no support to show that force-placing insurance constitutes an unusual level of involvement in her loan by Saxon such that it would create a duty

7

of care.  See Walters v. Fidelity Mortg. of Cal., No. S-09-3317 FCD KJM, --- F. Supp. 2d ----, 2010 WL 3069341, at *1, 18 (E.D. Cal. Aug. 4, 2010) (complaint alleging that lender force-placed insurance, among other acts, did not show a relationship outside the scope of a traditional lender-borrower relationship).

Plaintiff has alleged a duty of care under the six-part Biakanja/Nymark balancing test.  The "transaction" at issue includes Saxon's act of force-placing insurance and subsequent refusal to correct its mistake, which was certainly intended to affect plaintiff.  By over-charging plaintiff and marking her as in default when she allegedly was not, it was foreseeable that plaintiff would be harmed, and indeed she was.  Plaintiff alleges that Saxon's mistake and refusal to correct its mistake directly led to the foreclosure.  Plaintiff has alleged sufficient moral blameworthiness, given that plaintiff allegedly attempted to correct the problem multiple times and Saxon refused to do so. Finally, holding lenders liable when their mistakes, and solely their mistakes, lead to foreclosure of an innocent borrower's home may prevent future harm.

Taking the facts in the light most favorable to plaintiff, the court concludes that Saxon owed plaintiff a duty of care in this transaction.  Furthermore, plaintiff alleges that Saxon breached its duty by making plaintiff's account appear as if she was in default, which caused the foreclosure and subsequent damages.  Accordingly, Saxon's motion to dismiss

plaintiff's negligence claim is denied.[2]

    b. <u>Ocwen and U.S. Bank</u>

   As was the case when the court granted U.S. Bank and Ocwen's first motion to dismiss, plaintiff has cited no authority for the proposition that a subsequent purchaser of a loan, such as Ocwen, or the purchaser at a foreclosure sale, such as U.S. Bank, owes a duty to ensure the legitimacy of the record-keeping of the original owner of the loan. See <u>Hardy v. Indymac Fed. Bank</u>, 263 F.R.D. 586, 593-94 (E.D. Cal. 2009). Accordingly, the court will grant Ocwen and U.S. Bank's motion to dismiss plaintiff's negligence claim. See <u>Marks v. Ocwen Loan Servicing</u>, No. C 07-2133, 2009 WL 975792, at *7 (N.D. Cal. Apr. 10, 2009).

  2. <u>Negligent Misrepresentation Claim against All Defendants</u>

   The elements of negligent misrepresentation under California law are: "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." <u>Apollo Capital</u>

---

[2] The claim is not barred by the economic loss doctrine, which would otherwise preclude recovery for purely economic loss. That doctrine is intended to bar recovery that could be obtained through a breach of contract action. <u>United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.</u>, 660 F. Supp. 2d 1163, 1180 (C.D. Cal. 2009). The doctrine cannot be properly applied to this case; it normally applies in products liability and construction defect cases where physical injury is even possible and a contract has been breached. Furthermore, the same <u>Biakanja</u> factors that applied here also provide an exception to the economic loss doctrine when a special relationship exists between plaintiff and defendant. See <u>J'Aire Corp. v. Gregory</u>, 24 Cal. 3d 799, 804-05 (1979).

9

Fund, LLC v. Roth Capital Partners, LLC, 158 Cal. App. 4th 226, 243 (2d Dist. 2007) (citation omitted).

Plaintiff asserts that all defendants negligently misrepresented to her that she was behind on her payments and in default and that the Notice of Default and Notice of Trustee's Sale were accurate and lawful. (FAC ¶ 46.) She asserts that Saxon and Ocwen misrepresented that plaintiff let her insurance lapse, her only way to avoid losing the home was to accept the loan modifications, and she failed to timely make payments under the trial modifications. (Id.) Plaintiff asserts that Saxon misrepresented that it had acted legally in force-placing insurance, that she owed Saxon $523 each month for the insurance, and that Saxon corrected its accounting error and properly credited plaintiff's account to correct the error. (Id.) Plaintiff alleges that U.S. Bank misrepresented that it had a right to foreclose on her house and evict her. (Id.) Finally, plaintiff alleges that TDS misrepresented that it had a legal right to foreclose on her home. (Id.)

The representations involving default and other payment problems are not actionable because plaintiff actually contends that she knew their falsity. If so, she could not have relied on them. She admits that she never believed she was in default, but instead believed that defendants would foreclose on her home. (See Pl.'s Opp'n to Mot. to Dismiss by TDS at 5.) However, any representations involving foreclosure were not false because defendants did in fact foreclose.

The only representations that plaintiff alleges she believed, and on which she could possibly have relied, were the

10

statements that the only way to avoid losing her home was to accept loan modifications and that Saxon corrected its accounting error and properly credited her account to reflect the change. However, plaintiff does not allege any damages that resulted from her reliance on Saxon's representation about the loan modifications. While she accepted the modifications, she does not allege that the foreclosure or any other harmful act occurred because of her reliance. Similarly, even if plaintiff believed for a short time that Saxon had corrected its accounting error (FAC ¶ 17), her only "reliance" was to send in the next month's payment as usual. Even if this constituted reliance, she quickly learned that the representation was not true, as Saxon returned her payment and stated that she was in default. (Id.)  She alleges no damages that resulted from her payment, which was no different from the payments she had been making all along. Thus, plaintiff fails to sufficiently state a claim for negligent misrepresentation, and that claim is dismissed.

### 3. Fraud and Civil Conspiracy to Commit Fraud Claim against Saxon, Ocwen, and U.S. Bank

In California, the elements of a claim for fraud are "(a) a misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." In re Estate of Young, 160 Cal. App. 4th 62, 79 (4th Dist. 2008) (quoting Lazar v. Super. Ct., 12 Cal. 4th 631, 638 (1996) (internal quotation marks omitted)). Under the heightened pleading requirement for claims of fraud under Federal Rule of Civil Procedure 9(b), "a party

11

must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). A plaintiff must include the "who, what, when, where, and how" of the fraud. <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting <u>Cooper v. Pickett</u>, 137 F.3d 616, 627 (9th Cir. 1997)).

Conspiracy is a legal doctrine that establishes joint and several liability by the conspirators for an underlying tort. <u>See</u> <u>Entm't Research Grp. v. Genesis Creative Grp.</u>, 122 F.3d 1211, 1228 (9th Cir. 1997). A conspiracy to commit a tort therefore requires the commission of the actual underlying tort, although every member of the conspiracy need not commit all elements of the tort individually so long as a conspiracy has been formed and he or she acts in furtherance of its design. <u>See</u> <u>Applied Equip. Corp. v. Litton Saudi Arabia Ltd.</u>, 7 Cal. 4th 503, 510-11 (1994).

The allegedly fraudulent statements plaintiff complains of are identical to those in the negligent misrepresentation claim. (FAC ¶ 58.) As discussed above, plaintiff has not pled justifiable reliance or damages resulting from any of defendants' alleged misrepresentations, so her claim for fraud fails. The theory of civil conspiracy fails with the underlying tort. <u>See</u> <u>Applied Equip.</u>, 7 Cal. 4th at 510-11. The court therefore will grant defendants' motions to dismiss plaintiff's fraud claim.

    4.   <u>Cancellation of Instrument and Set Aside Trustee's Sale Claims against All Defendants</u>[3]

---

[3] The court previously denied Ocwen and U.S. Bank's motion to dismiss the cancellation of instrument claim (Docket No. 14) and those defendants do not contest it here. Plaintiff admits that Saxon, which no longer owns the loan, is not a proper party to the cancellation of instrument claim. Saxon is therefore dismissed as to that claim.

12

1    Plaintiff requests cancellation of the Trustee's Deed
2 Upon Sale of her property because she allegedly was not in
3 default when the foreclosure sale on her home took place.  (FAC
4 ¶¶ 71-72.)  "A written instrument, in respect to which there is a
5 reasonable apprehension that if left outstanding it may cause
6 serious injury to a person against whom it is void or voidable,
7 may, upon his application, be so adjudged, and ordered to be
8 delivered up or canceled."  Cal. Civ. Code § 3412.
9    As explained in the court's June 25, 2010, Order
10 ("Order") (Docket No. 14), plaintiff has sufficiently alleged an
11 irregularity with defendants' foreclosure sale under California
12 Civil Code sections 2924-2924*l*, California's statutory framework
13 for nonjudicial foreclosure sales, to survive dismissal of the
14 cancellation of instrument claim.  (Order at 9:20-10:28.)
15 Further, as the court explained in that Order, plaintiff need not
16 tender the full amount due on her loan to cancel the Deed.  (Id.
17 at 11:1-12:12.)  Because the court denies TDS's motion to dismiss
18 the cancellation of instrument claim, it will also deny the
19 motions to dismiss the claim to set aside the trustee's sale.
20 See Manuel v. U.S. Bankr. Ct., N. Dist., No. C 01-01434, 2001 WL
21 1382048, at *3 (N.D. Cal. Nov. 5, 2001) (nonjudicial foreclosure
22 sale may be set aside in when deed of trust is invalid).
23    5.   Slander of Title Claim against All Defendants
24    Plaintiff alleges that title to her property was
25 slandered when the Notice of Default and Notice of Trustee's Sale
26 were recorded.  (FAC ¶¶ 76-82.)  To state a claim for slander of
27 title, a plaintiff must establish: "1) a publication; 2) which is
28 without privilege or justification; 3) which is false; and 4)

13

which causes direct and immediate pecuniary loss." <u>Jackson v. Ocwen Loan Servicing, LLC</u>, No. 2:10-cv-00711 MCE GGH, 2010 WL 3294397, at *4 (E.D. Cal. Aug. 20, 2010) (citing <u>Manhattan Loft, LLC v. Mercury Liquors, Inc.</u>, 173 Cal. App. 4th 1040, 1050-51 (2d Dist. 2009)). Privileged communications include those made in an "official proceeding authorized by law." Cal. Civ. Code § 47(b).

California law requires notices of default and sale to be filed in each county where some of the mortgaged property is located. Cal. Civ. Code §§ 2924(a)(1), 2924(a)(3). The statute expressly states that "[t]he mailing, publication, and delivery of notices as required by this section" "shall constitute privileged communications pursuant to Section 47." <u>Id.</u> at § 2924(d)(1). The allegedly slanderous documents are privileged communications; accordingly, plaintiff's slander of title claim will be dismissed.[4]

      6.   <u>UCL Claim against Saxon, Ocwen, and U.S. Bank</u>

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice . . . ." Cal. Bus. & Prof. Code § 17200. This cause of action is generally derivative of some other illegal conduct or fraud committed by a defendant, and a plaintiff "must state with reasonable particularity the facts supporting the statutory elements of the violation." <u>Khoury v. Maly's of Cal., Inc.</u>, 14 Cal. App. 4th 612, 619 (2d Dist. 1993).

"Under its 'unlawful' prong, 'the UCL borrows

---

[4] Communications under section 47(b) are privileged without regard to malice. Cal. Civ. Code § 47(b). Thus, even if plaintiff had sufficiently alleged malice, her claim would fail. <u>See</u> <u>Hagberg v. Cal. Fed. Bank FSB</u>, 32 Cal. 4th 350, 361 (2004) (privilege applies "without respect to the good faith or malice of the person who made the statement").

14

violations of other laws . . . and makes those unlawful practices actionable under the UCL.'" Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1554 (4th Dist. 2007) (quoting Lazar v. Hertz Corp., 69 Cal. App. 4th 1494, 1505 (1st Dist. 1999)). "Thus, a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." Id. Plaintiff has stated a claim against Saxon for negligence, so the UCL claim against Saxon will survive. Plaintiff has not successfully alleged any unlawful conduct on the part of Ocwen or U.S. Bank, and cannot succeed on an "unlawful" UCL claim against them.

A "fraudulent" business act or practice is one in which members of the public are likely to be deceived. Olsen v. Breeze, Inc., 48 Cal. App. 4th 608, 618 (3d Dist. 1996). Plaintiff has not explained how defendants' actions would cause members of the public to be deceived, especially in light of the fact that plaintiff alleges that she was not deceived.

A business practice is "unfair" when it "violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." McKell v. Wash. Mut., Inc., 142 Cal. App. 4th 1457, 1473 (2d Dist. 2006). Plaintiff's allegations regarding Saxon's force-placing insurance may allege unfair as well as unlawful conduct in that a refusal to keep accurate accounts can cause injury to consumers without justification.

Plaintiff asserts that Ocwen acted unfairly by demanding monthly payments at the higher rate to reflect the homeowner's insurance, threatened foreclosure if she did not accept loan modifications, and filed a Notice of Default. (FAC ¶

91.)  However, the FAC contradicts plaintiff's assertion that Ocwen had anything to do with these actions, which all occurred before Ocwen was even alleged to have been involved with the loan.  (See id. ¶¶ 19, 21, 25, 28.)  Thus, plaintiff fails to allege any unfair practices on the part of Ocwen.

Finally, plaintiff alleges that U.S. Bank acted unfairly by foreclosing on the property when it did not have the legal right to do so (id. ¶ 91), and when all defendants were aware that plaintiff was never in default.  (Id. ¶ 107.)  If U.S. Bank foreclosed on plaintiff's home when it knew that it did not have the legal right to do so, its actions could be considered "unfair" under the UCL, so plaintiff has stated a claim sufficient to avoid dismissal.  Accordingly, defendants' motions to dismiss the UCL claim are granted as to Ocwen and denied as to Saxon and U.S. Bank.

B.   Motion to Strike

Federal Rule of Civil Procedure 12(f) enables the court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A motion to strike "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."  Lilley v. Charren, 936 F. Supp. 708, 713 (N.D. Cal. 1996).  Defendants move pursuant to Rule 12(f) to strike plaintiff's prayers for punitive damages, attorney's fees, injunctive relief, constructive trust, and

16

prejudgment interest.[5]

In the absence of a special agreement, statutory provision, or exceptional circumstances, attorney's fees are to be paid by the party employing the attorney. See Cal. Civ. Proc. Code § 1021. However, "[a] person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person" may recover attorney's fees. Prentice v. N. Am. Title Guar. Corp., 59 Cal. 2d 618, 620 (1963). In Prentice, as in this case, the alleged negligence of one party (here, Saxon) forced the plaintiff to bring a suit to quiet title against other defendants. Thus, it is possible that attorney's fees could be requested, and the court will deny Saxon's motion to strike.[6]

Prejudgment interest is only available when a person "is entitled to recover damages certain, or capable of being made certain by calculation," when "the right to recover . . . is vested in him upon a particular day." Cal. Civ. Code § 3287. Plaintiff's request for prejudgment interest is not based on any certain damages. Thus, Saxon's motion to strike plaintiff's prayer for prejudgment interest will be granted.

---

[5] Saxon's motion is moot with regards to punitive damages, which were only requested under plaintiff's fraud claim. Plaintiff concedes that her prayers for injunctive relief and constructive trust may be properly stricken as to Saxon.

[6] Vacco Indus., Inc. v. Van Den Berg, 5 Cal. App. 4th 34 (2d Dist. 1992), holding that Prentice does not apply when defendants are joint tortfeasors, does not change the outcome. A jury could find that only Saxon was negligent and that it was necessary to sue the other defendants for recovery of the property. The court cannot conclude that attorney's fees will have "no possible bearing" on the litigation. Lilley v. Charren, 936 F. Supp. 708, 713 (N.D. Cal. 1996).

17

1         IT IS THEREFORE ORDERED that defendants' motions to
2    dismiss plaintiff's First Amended Complaint be, and the same
3    hereby are, GRANTED as to plaintiff's claims for negligence
4    against Ocwen and U.S. Bank, negligent misrepresentation against
5    all defendants, fraud and civil conspiracy to commit fraud
6    against all defendants, cancellation of instrument against Saxon,
7    slander of title against all defendants, and violations of the
8    UCL against Ocwen, and DENIED in all other respects.
9         IT IS FURTHER ORDERED that defendant Saxon's motion to
10   strike portions of plaintiff's First Amended Complaint be, and
11   the same hereby is, GRANTED as to plaintiff's prayers for
12   injunctive relief, constructive trust, and prejudgment interest,
13   and DENIED in all other respects.
14        Plaintiff may therefore proceed under the First Amended
15   Complaint on her claims for negligence against Saxon;
16   cancellation of instrument against Ocwen, U.S. Bank, and TDS;
17   setting aside the trustee's sale against all defendants; and
18   violations of the UCL against Saxon and U.S. Bank.  If plaintiff
19   wishes to amend the complaint to cure the defects explained
20   above, she may do so within twenty days from the date of this
21   Order.  Otherwise, the case will proceed under the First Amended
22   Complaint.
23   DATED:  November 29, 2010

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE